# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| REBECCA L. JOHNSON and JOSEPHINE SMALLS MILLER.<br><br>        Plaintiffs,<br><br>        v.<br><br>KARYL CARRASQUILLA and MICHAEL BOWLER,<br><br>        Defendants. | No. 3:17-cv-1429 (MPS) |

## RULING ON MOTION TO DISMISS

Defendants Karyl Carrasquilla ("Carrasquilla") and Michael Bowler ("Bowler" and collectively, "Defendants") move under Fed. R. Civ. P. 12(b)(1) and (6) to dismiss the Second Amended Complaint ("SAC") brought by plaintiffs Rebecca L. Johnson ("Johnson") and Josephine Smalls Miller ("Miller" and collectively, "Plaintiffs").  (ECF No. 26.)  Johnson and Miller are attorneys who allege that they were singled out for attorney disciplinary proceedings due to their race and civil rights practice and assert claims for: (1) violation of their Due Process rights under the Fourteenth Amendment; (2) violation of the Equal Protection clause of the Fourteenth Amendment; (3) violation of 42 U.S.C. § 1983 for interfering with their right to use the federal courts; and (4) against Bowler only, violation of 42 U.S.C. § 1983 for interfering with the rights of African-Americans attorneys to make claims of racial discrimination.  Plaintiffs also move to strike several exhibits attached to defendants' motion.  (ECF No. 32.)  Because the SAC suffers from fatal jurisdictional and pleading flaws, I GRANT Defendants' motion to dismiss and DENY plaintiffs' motion to strike.  In light of this opinion, Plaintiff's motion for oral argument (ECF No. 40) is also DENIED.

# I.     Factual Background

This case largely repeats the allegations in an earlier case brought by Miller that I dismissed, and adds similar allegations by a second plaintiff, Johnson.  For an extensive discussion of Miller's substantially identical claims and a description of Connecticut's Attorney Discipline process, *see Miller v. Sutton*, No. 3:15-CV-1111 (MPS), 2016 WL 3976540, at *2 (D. Conn. July 21, 2016), *aff'd*, 697 F. App'x 27 (2d Cir. 2017).  I recite only the facts from Johnson's and Miller's SAC necessary to decide this motion.

Johnson and Miller are African-American attorneys licensed to practice in the State of Connecticut.  (ECF No. 20 (hereinafter "SAC") at ¶¶ 1–2.)  Defendant Michael Bowler is Bar Counsel for the Statewide Grievance Committee ("SGC"), and Defendant Karyl Carrasquilla is Chief Disciplinary Counsel, Office of the Chief Disciplinary Counsel ("OCDC").  (SAC at ¶¶ 3–4.)  I summarize Johnson's and Miller's allegations in turn below.

## A.     Johnson

Johnson was licensed to practice law in Connecticut starting in January 1994. (SAC at ¶ 6.)  The SGC suspended Johnson in 2002, 2004, and 2006.  (SAC at ¶¶ 6–11.)  In each instance, Johnson alleges that she was inexplicably singled out for discipline from other attorneys and firms participating in the same conduct.  (*Id.*)  During the 2006 suspension proceedings, Johnson also attempted to present evidence to the trial judge that her discipline was racially motivated, but the judge refused to consider the evidence.  (SAC at ¶¶ 13–16.)  Johnson applied for reinstatement in March 2009, but was denied.  (SAC at ¶¶ 18–23.)  The panel denying reinstatement allegedly chastised Johnson for choosing plaintiff Miller as her counsel for the proceedings.  (SAC at ¶ 22.)  Johnson alleges that when she applied for reinstatement again in 2013, she was referred to an individual associated with a group called Lawyers Concerned for Lawyers, who allegedly made

various statements to Johnson suggesting that the Connecticut judiciary would be hostile to her application for reinstatement if she continued to, among other things, engage in a civil rights practice or retain Miller as her attorney. (SAC at ¶¶ 24–27.) Johnson remains under suspension. (SAC at ¶ 28.) The SAC does not allege that Bowler and Carrasquilla were involved in Johnson's suspensions or attempts at reinstatement.

### B. Miller

Miller has been admitted to practice in Connecticut since 2004 and specializes in employment discrimination and civil rights law. (SAC at ¶¶ 30, 31.) Miller has previously brought civil rights cases in this Court against the City of Bridgeport and state agencies alleging racial discrimination. (SAC at ¶¶ 32–33.) Miller recites evidence of discrimination she allegedly presented in those actions—in particular, numerous incidents where the City of Bridgeport refused to pay attorney's fees for her legal services but did so for Caucasian attorneys in similar circumstances. (SAC at ¶ 34(a)(1)–(7).) Miller also alleges that the Connecticut judiciary has a conflict of interest in the attorney discipline process by virtue of its employment of the defendants. (SAC at ¶¶ 131–149.) Specifically, the SAC asserts that state prosecutors in Connecticut used to be part of the judicial branch, but, due to the appearance of a conflict in housing the prosecutorial and adjudicatory functions in the same branch of government, were later reorganized in the executive branch and given institutional protections from the judiciary. (SAC at ¶¶ 135–141.) Unlike in the criminal system, however, Miller alleges that the judicial branch has direct participation and oversight over the prosecution and adjudication of attorney discipline—in particular, Disciplinary Counsel are appointed by Superior Court judges for terms of only one year (SAC at ¶¶ 134, 144) and the Disciplinary Counsel are "assigned directly to the Chief Court Administrator" (SAC at ¶ 148).

The gravamen of Miller's allegations, however, centers around allegedly racially discriminatory enforcement of rules of professional conduct and actions taken during attorney discipline proceedings against her. I summarize these allegations in more detail below, after providing some relevant background.

### 1. Disciplinary Proceedings

The Court recites the following information as background only.[1] Miller has been subject to two disciplinary proceedings that appear to form the basis of her complaint. In the first, Grievance Complaint #14-0803, Judge Jeffrey Meyer of this Court sanctioned Miller for false statements made to the court by dismissing the case, imposing a fine, and referring Miller to the SGC. (ECF No. 26-2 (Ex. A) at 1–21.) The SGC forwarded Judge Meyer's referral to the Danbury Grievance Panel, which filed a formal grievance complaint against Miller. (ECF No. 26-2 (Ex. B) at 22–25.) The SGC then forwarded that complaint to the Stamford/Norwalk Grievance Panel, which found probable cause that Miller had violated the relevant professional rules. (ECF No. 26-2 (Ex. C) at 26–28.) The Complaint was forwarded to the Office of Chief Disciplinary Counsel ("OCDC") for prosecution before the reviewing committee of the SGC. (*Id.*) The SGC's formal proceeding against Miller is described at length in *Miller v. Sutton*, 2016 WL 3976540, at *5. As relevant here, defendant Carrasquilla presented evidence at the hearing on behalf of OCDC, arguing that Miller had made the false statements before this Court, but that the OCDC had not met its burden on certain additional allegations of unrelated attorney misconduct charged against Miller. (*See, e.g.*, ECF No. 26-2 (Ex. E) at 66.) The reviewing SGC committee ultimately found

---

[1] As discussed below, I take judicial notice of the documents attached to defendants' motion to dismiss for the fact of the proceedings, not for the truth of the matters contained therein.

Miller in violation for the underlying false statements, but did not find a violation for the additional allegations of misconduct. (*See* ECF No. 26-2 (Ex. F) at 77–80.)

In the other disciplinary action, Grievance Complaint #15-0688, following a similar process as described above, a reviewing committee of the SGC again held a formal hearing for allegations of misconduct against Miller arising from referrals from the Connecticut Appellate Court, a Connecticut Superior Court Judge, and disciplinary counsel Suzanne Sutton's investigation of misconduct in two other cases, *Igidi v. CT DOC et. al.*, No. 3:13 CV-01338-RNC (D. Conn.), and *Eaddy v. DCF et. al.*, No. HHD CV-10-6013363 (Conn. Super.) (the "*Igidi*" and "*Eaddy*" matters). (*See* ECF No. 26-2 (Exs. H) at 89–92). (Attorney Sutton is not a defendant in this action.) The SGC reviewing committee again found Miller in violation, but instead of issuing discipline, directed the OCDC to file a presentment proceeding in the Superior Court. (ECF No. 26-2 (Ex. K) at 112–114.)

### 2. Allegations against Bowler

Miller's allegations against Bowler focus on his role in assisting the SGC with Grievance Complaint No. 15-0688.

Miller alleges that Bowler "caused an investigation to be made of at least two of Miller's race discrimination/civil rights cases while refusing to perform investigation of Caucasian attorneys" and "caused a hearing to be held regarding allegations of professional misconduct that had been raised by members of the Connecticut judicial branch." (SAC at ¶¶ 34(c), 61.) In particular, Miller states that the SGC, through Bowler, filed a complaint against Miller for "the alleged filing of false, unmeritorious, frivolous complaints or allegations of racial discrimination" in the *Igidi* and *Eaddy* matters. (SAC at ¶ 34(d).) Miller also alleges that Bowler improperly allowed the Connecticut Superior Court judge's referral against Miller to proceed through the

disciplinary process when he knew that the allegations were biased and based on false evidence. (SAC at ¶¶ 50–52.)  Miller further alleges that Bowler failed to advise her about the existence of a hearing transcript that the SGC reviewing committee relied on in reaching its decision.  (SAC at ¶¶ 62–69.)  The SAC also alleges that Bowler should have known that the Appellate Court's referral in the 15-0688 matter was inappropriate because the underlying conduct did not rise to an ethical violation, among other reasons.  (SAC at ¶ 113.)

Miller's other allegations do not specifically pertain to the disciplinary proceedings against her.  For example, Miller alleges that Bowler took no action to investigate her complaint about alleged misstatements made by a Connecticut Assistant Attorney General.  (SAC at ¶ 34(b).) Miller alleges that Bowler acted in concert with Carrasquilla and others to "interfere with Miller's pursuit of racial discrimination complaints on behalf of her clients," and singled out racial discrimination complaints in particular.  (SAC at ¶¶ 35–37.)  Miller also alleges that Bowler sought to insulate several other attorneys from discipline for professional misconduct because they were Caucasian.  (SAC at ¶¶ 38–60.)  The complaint alleges that several of these complaints were resolved at the probable cause stage or otherwise no referral was made.  (*See, e.g.*, SAC at ¶¶ 38–42 (no probable cause against Attorney Ingraham), 49(a)(1) (no referral against Attorney Jordano), 49(a)(2) (no referral against Attorney Trotta), 49(a)(3) (no referral against Attorney Johnson), 49(a)(4) (no referral against Attorney Cotter), 49(a)(7) (no referral against Attorney Tallberg), 54–57 (no probable cause against Attorney Rome).  The complaint does not clearly allege Bowler's role in these comparator cases, with one exception.  For Attorney Brouillet, Miller alleges Bowler failed to timely process Miller's complaint, but also alleges that the local grievance panel dismissed the complaint for lack of probable cause.  (SAC at ¶¶ 43–47.)

### 3. Allegations against Carrasquilla

Miller's allegations against Carrasquilla are largely identical to those against Bowler. (*See* SAC at ¶ 34(b), (c), 35, 49–52, 58, 61, 62–69, 113.) Miller's additional allegations pertaining to Carrasquilla are that: Carrasquilla recommended that one of the disciplinary actions against Miller advance to a presentment proceeding because, among other things, Miller's "attitude" was improper (SAC at ¶ 34(d));[2] that in the 14-0803 action, Carrasquilla improperly sought a voluntary suspension for Miller's false pleading and relied on an inappropriate Caucasian comparator (SAC at ¶ 34(e)); Carrasquilla had *ex parte* communications with the reviewing committee concerning Miller's decision not to seek reinstatement following the Grievance Complaint 15-0688 decision (SAC at ¶¶ 78–85); and Carrasquilla improperly permitted evidence of the *Igidi* and *Eaddy* cases to be used during the hearing in Grievance Complaint No. 15-0688 (SAC at ¶ 116).[3]

## C. Claims

Based on the foregoing allegations, Johnson and Miller allege four claims against Bowler and Carrasquilla in both their individual and official capacities. (SAC at 2, 42–46.) First, plaintiffs claim that defendants violated the Due Process Clause of the Fourteenth Amendment by (a) "[r]efusing to allow the calling of witnesses chosen by them in support of their defenses at the time of probable cause hearings"; (b) "[v]acating subpoenas lawfully issued to witnesses that would

---

[2] The SAC alleges that presentment was recommended in Grievance No. 15-0652, but this proceeding is not elsewhere discussed. (*Id.*) The Court assumes this is a scrivener's error.

[3] The SAC makes an assortment of other allegations about (a) Miller's inability to present evidence of racial disparity at one of her probable cause hearings (SAC at ¶¶ 92–96); (b) an unidentified Hartford Superior Court clerk's referral of Miller's client to the SGC and allegedly disparaging remarks made by an SGC attorney (SAC at ¶¶ 97–105); and the Connecticut judiciary's refusal to stay her suspension based on comparator cases (SAC at ¶¶ 117–129). None of these allegations suggest personal involvement by Bowler and Carrasquilla, and thus I do not address them further. *See Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) ("[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983.").

have supported the defense at probable cause hearings"; (c) "[r]efusing to permit access to all records, documents or other materials to which the reviewing panel has access at the time of probable cause hearings"; (d) "[c]laiming attorney client privilege, work product privilege or other privileges in avoidance of providing full access to records, documents or other material to which the reviewing panel has access at the time of probable cause hearings"; and (e) "[b]ringing multiple prosecutions of probable cause hearings instead of consolidation of complaint." (SAC at 42, ¶ 150.) Second, plaintiffs claim that defendants violated the equal protection clause of the Fourteenth Amendment by: (a) "[i]nvestigat[ng] . . . African-American attorneys under circumstances where similarly situated Caucasian attorneys were not investigated"; (b) "[i]nvestigating African-American attorneys at the insistence of judicial authorities under circumstances when they knew or should have known that those judicial complaints were made for biased, harassing and unwarranted reasons"; and (c) that defendants "knew or should have known of the propensity of Connecticut court system authorities to engage in a shadow process. . . ." (SAC at 44, ¶ 150.) Third, plaintiffs claim that defendants violated 42 U.S.C. § 1983, because by "finding professional misconduct in the circumstances as alleged herein, Carrasquilla and Bowler have interfered with Johnson and Miller's rights under 42 U. S. C. § 1983, the right to make a claim of racial discrimination, utilizing the federal district courts." (SAC at 44, ¶ 150.) Fourth, plaintiffs claim that defendants violated 42 U.S.C. § 1983 because by "finding professional misconduct in the bringing of claims of racial discrimination against Johnson and Miller, Carrasquilla and Bowler have maintained a policy and practice of interfering with the rights of African-American attorneys under 42 U. S. C. § 1983, to make claims of racial discrimination." (SAC at 45, ¶¶ 151.) They further allege that "the defendants have engaged in a continuous practice and policy of racially discriminatory enforcement of its attorney discipline processes,

beginning at least since January 2002 and continuing through the present." (SAC at 45, ¶¶ 152.)

Plaintiffs seek compensatory damages, declaratory relief, costs, and fees. (SAC at 46.)

## II.    Legal Standard

Generally, *pro se* plaintiffs are "entitled to special solicitude," and courts must interpret their submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citations omitted). *Pro se* attorneys, however, are generally experienced in litigation and cannot claim such "special consideration." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) (citation and internal quotation marks omitted); *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[T]he degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented . . . [A] lawyer representing himself ordinarily receives no such solicitude at all.") (internal citations omitted). As discussed above, Miller is an attorney licensed to practice in Connecticut, and she is representing Johnson in this action, so no solicitude is required.

Because this is a motion to dismiss, I take the plaintiffs' factual allegations in the complaint "to be true and [draw] all reasonable inferences in" their favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (citation omitted). In addition, "matters judicially noticed by the District Court are not considered matters outside the pleadings." *Id.* (citation omitted). As in *Miller v. Sutton*, No. 3:15-CV-1111 (MPS), 2016 WL 3976540, at *10 (D. Conn. July 21, 2016), *aff'd*, 697 F. App'x 27 (2d Cir. 2017), the Court may take judicial notice of documents filed in other cases and of the public records related to Miller and Johnson's SGC disciplinary proceedings. *Shakur v. Bruno*, No. 3:12CV984 SRU, 2014 WL 645028, at *1 (D. Conn. Feb. 18, 2014) ("When considering a motion to dismiss, the court may properly consider matters of which judicial notice may be taken. Judicial notice may be taken of documents filed in other cases and other courts.") (citation omitted); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings.") (citation omitted).[4]

Similar principles apply to that part of Defendants' motion brought under Rule 12(b)(1). *Gonzalez v. Option One Mortgage Corp.*, No. 3:12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) ("The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of

---

[4] Defendants have submitted a copy of Judge Meyer's sanctions order against Miller (ECF No. 26-2, Ex. A at 1–21); the rulings on Miller's two complaints to the Connecticut Commission on Human Rights and Opportunities (*id.*, Exs. N and O at 130-140); and several documents that are part of the record in Miller's underlying disciplinary proceedings. (*Id.*, Exs. A through M at 22–129). Plaintiffs move to strike these exhibits as inappropriate to consider on a motion to dismiss. (ECF No. 32). I do not consider these documents for their truth, and so such documents "are not considered matters outside the pleadings" requiring conversion to summary judgment. *In re Thelen LLP*, 736 F.3d at 219. Accordingly, plaintiffs' motion to strike is DENIED.

subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical.") (citations omitted). "In deciding both types of motions, the Court must accept all factual allegations in the [complaint] as true, and draw inferences from those allegations in the light most favorable to the [non-movant]." *Id.* "On a Rule 12(b)(1) motion, however, the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Id.* (citation omitted). In addition, the Court may refer to evidence outside the pleadings in deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See id.; Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing."). "A case is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Gonzalez*, 2014 WL 2475893, at \*2.

## III. Discussion

Defendants argue that the SAC should be dismissed because (1) the action is barred by the *Rooker-Feldman* doctrine (ECF No. 37 at 7); (2) defendants are entitled to absolute or qualified immunity on the individual capacity claims; (3) the Eleventh Amendment bars all official capacity claims; (4) *Younger* abstention bars any claim for prospective declaratory relief; and (5) the complaint fails to state a claim. (ECF No. 26 at 15–31). In the alternative, the defendants assert that the case should be stayed until the state disciplinary proceedings are concluded. (ECF No. 26 at 31.) I conclude that, to the extent plaintiffs challenge the decisions in the underlying state court

disciplinary actions, the Court does not have subject matter jurisdiction under the *Rooker-Feldman* doctrine. In any event, I find that the Eleventh Amendment and absolute immunity bar all official and individual capacity claims against Bowler and Carrasquilla. Finally, the plaintiffs fail to state a claim. I therefore GRANT the defendants' motion to dismiss.

### A. *Rooker-Feldman* Doctrine

Many of plaintiffs' allegations are based on injuries caused by state court judgments. Johnson alleges that she was suspended in three separate instances by the reviewing SGC committee or Connecticut Superior Court judges. (SAC at ¶¶ 9–12 (Johnson suspensions).) Miller alleges: (1) that she was prohibited from presenting particular evidence of racial discrimination hearing before the SGC reviewing panel (SAC at ¶¶ 92–96); (2) that both the Connecticut Appellate Court and the Connecticut Supreme Court refused to address her claim of racial discrimination and wrongly referred Miller or upheld her referral to the OCDC for further investigation (SAC at ¶¶ 106–115); and (3) in Miller's probable cause proceedings, that defendants "[r]efus[ed] to allow [Miller to] call[] [] witnesses chosen by [her]," "[v]acat[ed] subpoenas lawfully issued to witnesses that would have supported the defense," and "[r]efus[ed] to permit access to all records, documents or other materials to which the reviewing panel ha[d] access." (SAC at 42, ¶ 150(a)–(c).) In sum, both defendants challenge various aspects of the state court disciplinary process that resulted in the imposition of sanctions on them. To the extent that plaintiffs' complaint can be construed as challenging disciplinary sanctions imposed by state court judgments, including the decisions of the SGC, this action is barred by the *Rooker-Feldman* doctrine. (ECF No. 37 at 7.)[5]

---

[5] Though Defendants raised *Rooker-Feldman* for the first time on reply, the doctrine is jurisdictional and can be raised at any time. *See Fullerton Ave. Land Dev. Ltd. v. Cianciulli*, 48 F.

The *Rooker-Feldman* doctrine prevents federal courts from exercising jurisdiction over cases that challenge the validity of state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). *Rooker-Feldman* also precludes federal court review of decisions by "agencies that are appropriately characterized as arms of the state judiciary *qua* judiciary, either because they exercise powers that are inherent to the judiciary, or because the state has provided mechanisms for judicial review of their determinations that distinguish those determinations from other types of state administrative action." *Mitchell v. Fishbein*, 377 F.3d 157, 166 (2d Cir. 2004). Thus, "*Rooker–Feldman* doctrine bars federal district court review only of state-court decisions that are judicial in 'nature and effect,'" but "does not bar such review of an agency or committee decision that is in effect legislative or administrative." *Id.* at 167 (2d Cir. 2004) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476, (1983)). "A decision is judicial when it declares 'rights as they stand'; a decision is of a legislative character when it makes a declaration instead 'on rights which may arise in the future.'" *Id.* State courts imposing attorney discipline based on past misconduct are clearly adjudicative and thus not subject to federal court review under *Rooker-Feldman*. *See Zimmerman v. Grievance Comm. of the Fifth Judicial Dist. of the State of New York*, 726 F.2d 85, 86 (2d Cir. 1984) (concluding that *Rooker–Feldman* "clearly applies to federal district court challenges to attorney disciplinary orders rendered by state courts in judicial proceedings"). In this case, I conclude that the reviewing SGC committee's decision to find ethical violations and impose sanctions based on past attorney misconduct is adjudicatory in nature, because it determines an attorney's standing at that time, and so review of its decisions is likewise barred by *Rooker-Feldman*. *See Neroni v. Zayas*, 663 F. App'x 51, 53 (2d Cir. 2016)

---

App'x 813, 815 (2d Cir. 2002). The plaintiffs filed a sur-reply addressing Defendants' *Rooker-Feldman* argument. I grant the motion to file the sur-reply (ECF No. 38).

(rejecting argument attorney's disbarment by New York disciplinary attorney was an administrative decision because "attorney discipline is a power inherent to the judiciary").

With this threshold question resolved, I turn to whether the *Rooker-Feldman* factors are met here. Specifically, the doctrine applies where (1) the federal-court plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by a state court judgment"; (3) the plaintiff "invite[s] ... review and rejection of that judgment"; and (4) the state judgment was "rendered before the district court proceedings commenced." *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citing *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Hoblock*, 422 F.3d at 85. All four factors are met here.

First, as discussed above, both Johnson and Miller allege that they lost before state courts or the reviewing SGC committee.[6]

The second factor, that the plaintiffs must "complain of an injury caused by a state judgment," is "the core requirement from which the others derive." *Hoblock*, 422 F.3d at 87. All of Johnson's and many of Miller's allegations focus on injuries resulting directly from disciplinary

---

[6] Though Miller's allegations are admittedly less clear, I take judicial notice of the reviewing SGC committee's decision finding against her in both the Grievance Complaint No. 14-0803 and 15-0688 disciplinary matters. (ECF No. 26-2 (Ex. F) at 77–80; ECF No. 26-2 (Ex. K) at 107–14.) Defendants concede in their brief that the 15-0688 matter "remains open pending the Superior Court's resolution of the *de novo* presentment proceeding." (ECF No. 26-1 at 7.) Plaintiffs do not allege in their complaint the current status of the proceedings, nor do they argue that the existence of a pending *de novo* appeal makes *Rooker-Feldman* inappropriate. (ECF Nos. 36, 38 (proposed sur-reply).) "[T]he Second Circuit has not adopted [an] interpretation of *Rooker-Feldman* [that prevents its application while the state court judgment is being appealed], and district courts in the Circuit have also rejected it." *Johnson-Gellineau v. Steine & Assocs., P.C.*, No. 16-CV-9945 (KMK), 2018 WL 1605574, at *7 n.11 (S.D.N.Y. Mar. 29, 2018). Accordingly, because the presentment proceeding is effectively an appeal of the SGC reviewing committee's final decision, I conclude that *Rooker-Feldman* applies.

14

orders by state courts or the SGC. Johnson challenges the reviewing SGC committee's and state court's suspension of her license and their subsequent refusals to reinstate her. (SAC at ¶¶ 9–12.) Miller's challenges are more varied, but assert injuries directly resulting from the Appellate and Supreme Court's orders referring her for discipline (SAC at ¶¶ 106–115), alleged restrictions at the probable cause stage that precluded Miller from presenting exculpatory evidence (SAC at 42, ¶ 150(a)–(c)), similar alleged restrictions before the SGC reviewing panel (SAC at ¶¶ 92–96), and other unenumerated harms resulting directly from "finding professional misconduct in the circumstances as alleged herein" and "finding professional misconduct in the bringing of claims of racial discrimination against Johnson and Miller," *i.e.* the SGC's determination of misconduct against Miller   (SAC at 44, ¶ 150, 45, ¶ 151.)   Accordingly, both Johnson and Miller complain of injuries resulting from state court or SGC judgments. *See also Maddox*, 303 F. App'x at 965 (finding *Rooker-Feldman* barred challenge to attorney discipline based on "Second Department's failure to explain its refusal to reinstate him").

Third, and relatedly, both Johnson and Miller invite rejection of the judgments.  By asserting constitutional deficiencies throughout the process (*see, e.g.,* SAC at 43, ¶ 150(a)-(c)), plaintiffs effectively seek review of the reviewing SGC findings against them. *See McKeown v. N.Y. State Comm'n on Judicial Conduct*, 377 F. App'x 121, 123 (2d Cir. 2010) (affirming dismissal under *Rooker-Feldman* where constitutional claims under First and Fourteenth Amendment "effectively require review of state court decisions regarding the discipline of [two attorneys]"); *Maddox*, 303 F. App'x at 965 (holding that attorney's claims "relating to compulsory process and discovery rights for disciplined attorneys violated the Fourteenth Amendment" and "that the Second Department discriminated against him on the basis of race" were challenges to the underlying disciplinary proceeding).

Fourth and finally, the state judgment was rendered before the district court proceedings commenced. This action was filed on August 23, 2017. (ECF No. 1.) Johnson's last suspension was in 2006 and her last attempt at reinstatement alleged in the complaint was in 2014. (SAC at ¶¶ 10, 18–20.) Miller was found in violation by the SGC reviewing committee on June 23, 2017, two months before this action was filed. (ECF No. 26-2 (Ex. K) at 114.) Accordingly, all four *Rooker-Feldman* factors are met.

In their sur-reply addressing *Rooker-Feldman*, the plaintiffs assert that the complaint alleges a general constitutional challenge against the state's disciplinary statutes that is not barred by the doctrine. (ECF No. 38 at 3–6.) They argue that the Supreme Court in *Feldman*, 460 U.S. at 482–83, drew a distinction between actions seeking review of a state court's disposition of a specific claim, which only the Supreme Court may review, and actions "mount[ing] a general challenge to the constitutionality" of state legislation, over which a district court can exercise jurisdiction. (ECF No. 38 at 2.) Plaintiffs claim that because they allege a "facial challenge to the administration of the Rules of Professional Conduct" and a "pattern and practice of discriminatory and retaliatory treatment of African-American attorneys," this action falls outside of *Rooker-Feldman*'s scope. (ECF No. 38 at 4, 6.)

I disagree. The distinction in *Feldman* between reviewable and non-reviewable decisions did not rest on 'general' constitutional challenges versus 'specific' claims. In *Feldman*, bar applicants who had not attended law school challenged the validity of a D.C. rule that required attendance at an approved law school for bar admission following the D.C. appeals court's denial of their petition for a waiver from the rule. *Feldman*, 460 U.S. at 464–73. The Supreme Court held that the D.C. appeals court's rulings on the plaintiffs' waiver petition were judicial in nature, but the Court acknowledged that this would not preclude jurisdiction over the plaintiff's "general

attack on the constitutionality of [the state bar rule]." *Id.* at 487. The Court explained that district courts "have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case," but "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings *even if those challenges allege that the state court's action was unconstitutional*." *Id.* at 486 (emphasis added). Here, contrary to plaintiffs' characterization of their claims in their brief, Johnson and Miller do not make any general attack on state disciplinary rules or challenge them as "facial[ly]" unconstitutional. Rather, they explicitly challenge them "as applied to Johnson and Miller under the circumstances alleged herein," meaning they claim the state court judgments were unconstitutional based on the particular enforcement of the disciplinary rules in their cases. (SAC at 43, ¶ 151, 44, ¶ 151.) As this Circuit's precedent has held, this is exactly what *Feldman* prohibits. *See McKeown*, 377 F. App'x at 123 (affirming lack of subject-matter jurisdiction under *Rooker-Feldman* where "constitutional claims effectively require review of state court decisions regarding the discipline of [two attorneys]"); *Maddox*, 303 F. App'x at 965 (affirming rejection of "Maddox's claim of discrimination in past proceedings . . . on *Rooker–Feldman* grounds" and noting Maddox lacked standing to assert a claim of future discrimination).

Nor do plaintiffs sufficiently allege a "pattern and practice of discriminatory and retaliatory treatment of African-American attorneys." (ECF No. 38 at 5; SAC at 45, ¶ 151–52.) The only supporting allegations in the SAC plaintiffs cite in support of this "pattern" that do not pertain to Miller or Johnson themselves relate to Attorney Joseph Elder, who plaintiffs allege "sought, but was denied, a stay of execution of" his suspension during the pendency of his appeal while Caucasian attorneys were permitted a stay. (SAC at ¶¶ 117–131.) These allegations are

threadbare—plaintiffs do not even allege what supposed misconduct Elder was suspended for, let alone whether the Caucasian attorneys who were afforded a stay engaged in similar conduct. It thus cannot plausibly be inferred that from plaintiffs' allegations that Elder's denial of a stay was in fact part of a broader pattern of "discriminatory" or "retaliatory" conduct.

Plaintiffs also point to their allegations concerning a "conflict of interest" built into the disciplinary system. (ECF No. 38 at 6–7; SAC at ¶¶ 134–149.) But the SAC does not identify what statute or constitutional provisions plaintiffs challenge, nor does it specify what federal or state constitutional provision the supposed conflict of interest violates. Nor does it allege any facts suggesting that Bowler or Carrasquilla would be a proper defendant in such a systemic challenge. Neither is alleged to have created the system of attorney discipline in Connecticut or to have the authority to alter it. As set forth in more detail in *Sutton*, 2016 WL 3976540, that system is a creature of Connecticut Practice Book rules, which are adopted by state judges. *See* Conn. Gen. Stat. § 51-14. To the extent that Miller and Johnson attempt to allege a general challenge to Connecticut's attorney disciplinary rules and system, more specific allegations are required.

To the extent the well-pleaded allegations in the complaint assert injuries caused by state court judgments, the action is barred by the *Rooker-Feldman* doctrine and the Court lacks subject-matter jurisdiction.

### B. Eleventh Amendment

To the extent any of plaintiffs' allegations assert injuries not caused by state court judgments, the Eleventh Amendment bars all claims brought against Bowler and Carrasquilla in their official capacities. "The Eleventh Amendment precludes suits against states unless the state expressly waives its immunity or Congress abrogates that immunity." *See Li v. Lorenzo*, 712 F. App'x 21, 22 (2d Cir. 2017). An official capacity suit against a state employee is treated as a suit

against the state. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Johnson and Miller do not claim that Connecticut has in any way waived its immunity here, nor that Congress has abrogated it. Accordingly, the Court must dismiss the official capacity claims against Bowler and Carrasquilla. *See Li*, 712 F. App'x at 22 (dismissing *pro se* lawyer's claims against attorneys who litigated disciplinary charges against him on Eleventh Amendment grounds).

In their brief, plaintiffs attempt to avoid the application of the Eleventh Amendment by recharacterizing their requested relief as prospective, not retrospective. (ECF No. 36 at 39–40, 42 (asserting claims for a "cease and desist" order).) This attempt fails.

First, the SAC does not allege that Miller and Johnson are subject to ongoing harm.[7] Rather, the SAC seeks money damages and declaratory relief to remedy *past* alleged discrimination—Bowler's and Carrasquilla's conduct in the underlying disciplinary proceedings. (SAC at 42–46.) The Eleventh Amendment bars such relief against the state. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000) (holding that a party may not recast a claim for declaratory relief as prospective "when the result would be a partial 'end run' around" the Eleventh Amendment bar on monetary damages against the state) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985).) Nor does the SAC suggest any imminent future harm or any need to declare the parties' rights to avoid future uncertainty, circumstances that would avoid the Eleventh Amendment bar. *See Ex parte Young*, 209 U.S. 123, 192 (1908) (permitting an exception to the Eleventh

---

[7] The plaintiffs may have reframed the relief sought in their complaint to avoid the same outcome as in *Miller v. Sutton*, where prospective injunctive relief based on nearly identical factual allegations was barred by *Younger*. 2016 WL 3976540, at *1 n.2, *21.

Amendment immunity where a plaintiff seeks a prospective, injunctive remedy to prevent state officials from violating federal law).

Second, plaintiffs assert in the briefs that they seek to enjoin harm from possible future disciplinary proceedings against them.  (ECF No. 38 at 5).  Even if plaintiffs had made these allegations in the SAC, plaintiffs would not have standing to seek such injunctive relief as the possibility of future proceedings against them is entirely speculative.  *See City of L.A. v. Lyons*, 461 U.S. 95, 110 (1983) (holding that "speculative nature of [plaintiff's] claim that he will again experience injury as the result of that practice even if continued" was insufficient to confer standing to seek injunctive relief).

Accordingly, Johnson's and Miller's official capacity claims, which are based entirely on past events and allege no ongoing violation, are barred by the Eleventh Amendment.  *See Li*, 712 F. App'x at 23 (affirming claim for declaratory and injunctive relief as barred by Eleventh Amendment because "Li's disciplinary proceedings have ended . . . and he alleged injuries stemming only from past conduct with no plausible threat of future violations.").

### C.     Absolute Immunity

To the extent the plaintiffs allege injuries not caused by state court judgments, the doctrine of absolute immunity bars their claims for money damages and retrospective declaratory relief against Carrasquilla and Bowler in their individual capacities.  "Government officials who perform functions closely associated with the judicial process, including prosecutors, administrative law judges and hearing examiners, are entitled to absolute immunity for acts taken pursuant to their office."  *Finn v. Anderson*, 592 F. App'x 16, 18-19 (2d Cir. 2014).  The Court of Appeals has "consistently extended such 'quasijudicial' immunity to investigators with attorney grievance committees . . . ."  *Id.*; *Li*, 712 F. App'x at 23 (attorneys employed by local grievance committee

who "litigated disciplinary charges against" the plaintiff were entitled to absolute immunity); *see also McKeown*, 377 F. App'x at 124 ("Prosecutors, hearing examiners, and law clerks are eligible for absolute immunity, and those involved in preparing and adjudicating attorney discipline proceedings share analogous roles."). Courts have applied absolute immunity to the type of selective prosecution claims Miller and Johnson make here. *See Bernard v. Cty. of Suffolk*, 356 F.3d 495, 503, 505 (2d Cir. 2004) (observing that "racially invidious or partisan prosecutions, pursued without probable cause, are reprehensible, but such motives do not necessarily remove conduct from the protection of absolute immunity" and holding that "regardless of defendants' political motives, absolute immunity shields them from suit pursuant to § 1983 for their alleged malicious or selective prosecution of plaintiffs").

Plaintiffs argue that Bowler and Carrasquilla's function was merely investigative, and therefore they are not entitled to sovereign immunity even if they had prosecutorial roles. (ECF No. 36 at 15–17.) This argument fails. As an initial matter, *Burns v. Reed*, 500 U.S. 478 (1991), which plaintiffs cite, did not hold that absolute immunity does not apply to investigative activities at all. Rather, *Burns* held only that a prosecutor's giving legal advice to the police in the investigative phase of a criminal case was not so "intimately associated with the judicial phase of the criminal process" to be entitled to judicial immunity. *Id.* at 492. The focus, the Court said, was on whether "the prosecutor's actions are closely associated with the judicial process." *Id.* at 495.

In this case, the only allegation regarding investigative activity is that Bowler and Carrasquilla "caused an investigation to be made" of Miller's conduct in the *Eaddy* and *Igidi* cases, "while refusing to perform investigation[s] of Caucasian attorneys." (SAC at ¶ 34(c).). But Plaintiffs do not support this allegation with any specific actions allegedly taken by either Bowler

or Carrasquilla. This allegation is thus conclusory and so need not be credited to divest both defendants of absolute immunity.[8] *See Iqbal*, 556 U.S. at 678. The remaining specific allegations of actions taken by each defendant relate entirely to prosecutorial or quasi-judicial functions in pursuing the disciplinary cases against Miller.[9] Specifically, the SAC alleges that Bowler, in the 15-0688 matter:

- "[F]iled a complaint" against Miller "based upon a referral by the Danbury Local panel, finding probable cause" for misconduct by Miller in the *Igidi, Eaddy* matters. (SAC at ¶ 34(d));
- "[F]iled a complaint against Miller based . . . upon a referral [by a Connecticut Superior Court judge] which claimed she had engaged in misconduct," even though he "knew or should have known that the referred conduct was not a violation of any ethical rule" and was based upon false evidence, and "permitted the matter to proceed to a local grievance panel." (SAC at ¶ 50–52);
- "[F]ound probable cause and pursued disciplinary proceedings against Miller when Caucasian attorneys have not been disciplined or referred for discipline," and "caused a hearing to be held regarding allegations of professional misconduct that had been raised by members of the Connecticut Judicial Branch." (SAC at ¶ ¶ 59–61); and
- Failed to advise Miller about the existence of a hearing transcript that the reviewing committee relied on in reaching its decision. (SAC at ¶ 62–67.)

Similarly, the SAC alleges that Carrasquilla, in both disciplinary actions:

- "[D]etermined at the end of the probable cause hearing that she would recommend Miller for a presentment" because, among other things, Miller's "attitude" was improper (SAC at ¶ 34(d));
- Improperly sought to have Miller agree to a voluntary suspension for Miller's false pleading in Grievance No. 14-0803 (SAC at ¶ 34(e));

---

[8] This allegation also directly contradicts Miller's earlier allegation in the *Sutton* case, on which this Court relied in deciding the motion to dismiss, that "OCDC and *Sutton* investigated at least two of her cases that allege racial discrimination, Igidi v. Department of Correction . . . and Eaddy v. Department of Children & Families." *Sutton*, 2016 WL 3976540, at *5 (emphasis added). Miller is judicially estopped from now contradicting this allegation to substitute these defendants for Sutton in order to avoid the application of absolute immunity. *See DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (explaining that judicial estoppel will apply if: "1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel.").

[9] As discussed *supra* and *infra*, the SAC does not allege that Bowler and Carrasquilla had personal involvement in any of Johnson's disciplinary proceedings.

- Had *ex parte* communications with the reviewing committee in Grievance Complaint No. 15-0688 (SAC at ¶¶ 78–85); and
- Improperly permitted evidence of the *Igidi* and *Eaddy* cases to be used during the hearing in Grievance Complaint No. 15-0688 (SAC at ¶ 116.)

Accepting plaintiffs' factual allegations as true, I find that all specific activities alleged against both defendants are "intimately associated" with the disciplinary proceedings against Miller—the filing of a complaint, communications with an adversary about evidence to be relied on by the adjudicator, determining whether to recommend formal charges after a probable cause hearing, permitting particular allegations to proceed, particular conduct and materials relied on during the proceedings, and discussing potential resolution of the disciplinary action. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) (holding that a prosecutor has absolute immunity "in initiating a prosecution and in presenting the State's case," even though the complaint alleged that the prosecutor allowed a witness to provide false testimony and a fingerprint expert to suppress evidence); *Burns*, 500 U.S. at 490 (1991) (noting that conduct at grand jury and probable cause hearings was also insulated). Plaintiffs do not point to any particular allegations in their complaint that suggest defendants' conduct was too far removed from prosecuting the disciplinary proceedings to qualify for absolute immunity.[10]

Instead, Plaintiffs rely on their numerous allegations that Bowler and Carrasquilla failed to investigate *other* attorneys when Plaintiffs asked them to. (SAC at ¶¶ 38–60; ECF No. 36 at 17–18.) Plaintiffs apparently recite what was done or not done to other lawyers as a means of showing

---

[10] Plaintiffs cite *Goldstein v. Moatz*, 364 F.3d 205 (4th Cir. 2004) for the proposition that investigatory functions are not covered by absolute immunity. In *Goldstein*, the Fourth Circuit held that Patent Office attorneys "acted merely as investigators and are therefore not entitled to absolute immunity" where they investigated prior to a "probable cause assessment or determination." 364 F.3d 205, 215 (4th Cir. 2004). *Goldstein* is not binding on this Court, but it is distinguishable in any event because the SAC itself alleges that Bowler's and Carrasquilla's challenged actions were either made either as part of or after the probable cause determination in Grievance No. 15-0652. (SAC at ¶ 34(d)-(e).)

discriminatory intent, but such allegations do nothing to help them overcome the obstacle of absolute immunity, because they suffered no injury from the defendants' enforcement decisions in cases involving other lawyers. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). In any event, the decision not to investigate or not to initiate disciplinary proceedings against others is squarely protected by absolute immunity. *See McKeown*, 377 F. App'x 121, 124 (2d Cir. 2010) (holding that decision of disciplinary "attorneys not to initiate disciplinary proceedings against [two other attorneys] are protected by the doctrine of quasi-judicial immunity"); *Marczeski v. Handy*, 213 F. Supp. 2d 135, 141 (D. Conn. 2002) ("[C]laims based on an alleged failure to investigate come within the absolute immunity afforded by *Imbler [v. Pachtman*, 424 U.S. 409 (1976)].""). Miller also alleges that Bowler took improper actions during disciplinary proceedings when *Miller* filed grievances filed against other, Caucasian attorneys. In particular, Miller alleges that she filed a grievance against Attorney Betsy Ingraham, but that Bowler and the Fairfield Judicial District Grievance panel refused to allow her to respond to Attorney Ingraham's answer as they sought to insulate Attorney Ingraham from discipline because she is Caucasian. (SAC at ¶¶ 38–42.) Miller further alleges that she filed a grievance against another attorney, Assistant Attorney General Nancy Brouillet, but Bowler and the SGC refused to process her grievance for the same reason until Miller insisted that they do so. (SAC at ¶¶ 43–48.) Miller lacks standing to pursue these claims. *Linda R.S.*, 410 U.S. at 619. Accordingly, plaintiffs' claims against Bowler and Carrasquilla in their individual capacity are barred by absolute immunity.

### D.      Failure to State a Claim

In any event, the SAC must be dismissed for failure to state a claim for a plethora of reasons, only a few of which I discuss here.  First, both plaintiffs assert two causes of action directly under the Fourteenth Amendment, which they may not do.  (SAC at 42–43.)  *Lehman v. Doe*, 66 F. App'x 253, 255 (2d Cir. 2003) ("[W]hen § 1983 provides a remedy, an implied cause of action grounded directly in the Constitution is not available.").  Second, Johnson's § 1983 claims are time-barred on the face of the complaint, as the last event she alleges occurred in April 2014 (SAC at ¶¶ 24, 26) and this action was filed in August 23, 2017. (ECF No. 1.)  *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994) (applying three-year statute of limitations for § 1983 actions in Connecticut.).  Third, Johnson's § 1983 claims are also deficient because they do not allege any personal involvement by Bowler or Carrasquilla.  (SAC at ¶¶ 6– 28.)  *See Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) ("[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983.").  Fourth, the claim for retrospective declaratory relief is duplicative of the claim for damages and should thus be dismissed.  *See Plumbing Supply, LLC v. ExxonMobil Oil Corp.*, No. 14 CV 3674 (VB), 2016 WL 1249611, at *11 (S.D.N.Y. Mar. 29, 2016) ("Claims for declaratory judgment should be dismissed where they merely duplicate other claims.") (footnote omitted).  Fifth, Miller's allegations concerning Attorneys Ingraham, Brouillet, and Rome are identical to the allegations she made in *Sutton,* which I held were conclusory and inadequate to show that these attorneys were similarly situated to Miller for purposes of a claim of racial discrimination.  *See Sutton*, 2016 WL 3976540, at *6, 16–17 (concluding that Miller's allegations that "Bowler, Sutton, and members of the SGC sought" to insulate Attorneys Ingraham, Brouillet, and Rome from grievance complaints filed by Miller or her client were insufficient to

plead selective prosecution based on "similarly situated" comparators).  For the remaining comparators Miller now identifies (*see, e.g.*, SAC at ¶ 49(a)(1)–(5), (7)), Miller inadequately alleges that these attorneys were similarly situated and, more importantly, Miller makes no effort to allege that *Bowler or Carrasquilla* treated those attorneys differently based on race.  Rather, "to the extent these attorneys were treated differently from Miller, this was apparently a result of decisions reached by independent groups—not Defendants" as to whether to refer the cases for discipline.  *Sutton*, 2016 WL 3976540, at *17.  Miller's reliance on Attorney Sutton as a comparator (SAC at ¶ 49(a)(6)) also does not withstand scrutiny as it appears to be based on Sutton's conduct during the very disciplinary proceeding against Miller at issue in *Sutton*, and further is irrelevant to whether Bowler and Carrasquilla singled out race discrimination claims for discipline.  (*See, e.g.*, SAC at ¶¶ 36–37.)  Sixth and finally, the remaining causes of action (Counts 3 and 4), which the Court reads as asserting 'access to courts' claims under the First Amendment,[11] must be dismissed because plaintiffs fail to allege that the denial of access resulted in "'actual injury,' such as the dismissal of an otherwise meritorious legal claim on direct appeal."  *John v. New York Dep't of Corr.*, 130 F. App'x 506, 507 (2d Cir. 2005).  Further, Miller's repeated federal lawsuits against Connecticut attorney disciplinary authorities alleging racial discrimination and other civil rights violations belie this claim.  Accordingly, I would dismiss the SAC in any event under Rule 12(b)(6) for failure to state a claim.

---

[11] (SAC at 44, ¶ 150 (alleging that Defendants "have interfered with Johnson and Miller's rights under 42 U. S. C. § 1983, the right to make a claim of racial discrimination, utilizing the federal district courts."); *id* at 45, ¶ 151 (alleging that Defendants "have maintained a policy and practice of interfering with the rights of African-American attorneys under 42 U. S. C. § 1983, to make claims of racial discrimination").  Plaintiffs do not dispute defendants' characterization of these counts as 'access-to-courts' claims in their opposition.  (ECF No. 36.)

## IV. Conclusion

For all the foregoing reasons, I GRANT Defendants' motion to dismiss (ECF No. 26), DENY plaintiffs' motion to strike (ECF No. 32), GRANT plaintiffs' motion to file sur-reply (ECF No. 38), and DENY plaintiffs' motion for oral argument (ECF No. 40).

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            October 15, 2018